Richard L. BARNES and Ruth Ann Barnes, Plaintiffs–Appellees,

v.

Robert G. WINFORD, Randy M. Pech and Marshall E. Ryan, Defendants–Appellants.

No. 89CA1864.

Colorado Court of Appeals, Div. II.

Sept. 26, 1991.

As Modified on Denial of Rehearing Jan. 30, 1992.

Certiorari Denied Aug. 3, 1992.

Hendricks & Hendricks, P.C., David L. Shakes, Colorado Springs, for plaintiffs-appellees.

John S. Kellogg, Denver, for defendants-appellants.

Opinion by Judge JONES.

Defendants, Robert G. Winford, Randy M. Pech, and Marshall E. Ryan, appeal the

trial court's judgment quieting title to certain real property in plaintiffs, Richard L. and Ruth Ann Barnes. We affirm, but remand this matter as to attorney costs and fees.

Plaintiffs brought suit to quiet title in themselves to specified parcels of real property located in El Paso County. One of those parcels, a former railroad right-of-way conveyed by Isaac Ericson (Ericson) to the Denver and Rio Grande Railroad Company (Railroad), is the subject of this appeal.

In the trial court, plaintiffs based their claim of title on three separate grounds. First, they claimed title based upon an unbroken chain of deeds conveying a possibility of reverter interest retained by Ericson at the time the right-of-way was initially conveyed. Second, they claimed title based upon their compliance with § 38–41–108, C.R.S. (1982 Repl.Vol. 16A), which generally provides legal title to persons who have maintained actual possession of land under color of title for seven years and who have paid all taxes on such land over that same period. Finally, plaintiffs claimed title by virtue of their ownership of land which abuts the right-of-way which the record reflects was abandoned by the railroad in 1975 or 1976.

The trial court quieted title in plaintiff under each of the three asserted bases.

In November 1885, Ericson conveyed a right-of-way to the Railroad consisting of a strip of land 100 feet wide across his 10–acre parcel of land. The deed contained the following limitation:

"It is agreed and understood that in case the party of the second part should abandon the above mentioned land and not use it for Railway purposes that it shall revert to the party of the first part".

Immediately thereafter, Ericson conveyed the underlying 10–acre parcel, "[t]ogether with … the reversion and reversions, remainder and remainders … and all the estate, right, title, interest, claim and demand whatsoever…." to The National Land and Improvement Company of Colorado (National), "saving and excepting" the right-of-way of the Railroad through and across the land. Plaintiff is the successor in title to National.

In 1975, the Railroad ceased using the railway across the 10–acre parcel, and in 1976, the railroad track was removed. Several weeks later, plaintiffs began earth-moving operations to backfill, grade, and reclaim the right-of-way area. These efforts continued into 1985. Plaintiffs openly used the area for vehicle storage and parking. Plaintiffs also paid taxes assessed on the 10–acre parcel from 1974 through 1985.

In October 1985, the Railroad conveyed, by quitclaim deed, its rights in the area to defendants.

■ We initially note that Ericson's right-of-way conveyance to the Railroad constituted a fee simple determinable. *See School District No. 6 v. Russell*, 156 Colo. 75, 396 P.2d 929 (1964) (construing identical language of limitation). Ericson, therefore, retained a possibility of reverter interest in the land occupied by the right-of-way which would vest automatically when and if the Railroad ceased to use the right-of-way for "railway purposes."

■ Even if we were to assume that a possibility of reverter is not alienable in this jurisdiction, *see Denver & Santa Fe Ry. Co. v. School District No. 22*, 14 Colo. 327, 23 P. 978 (1890), we conclude that the deed at issue here purported to convey that interest in the language of the habendum clause. Thus, color of title in the interest was created for National and each of its successors, including plaintiffs in this action.

Defendants contend that the trial court erred in concluding that plaintiffs had acquired title through compliance with § 38–41–108, C.R.S. (1982 Repl.Vol. 16A). We disagree.

Section 38–41–108 provides as follows:
"Every person in the actual possession of lands or tenements, under claim and color of title, made in good faith, who for seven successive years continues in such possession and also during said time pays all taxes legally assessed on such

lands or tenements shall be held and adjudged to be the legal owner of said lands or tenements to the extent and according to the purport of his paper title. All persons holding under such possession by purchase, devise, or descent, before said seven years have expired, who continue such possession and continue to pay the taxes as provided in this section, so as to complete the possession and payment of taxes for the term, provided in this section, shall be entitled to the benefit of this section."

■ Defendants first claim that plaintiffs failed to comply with § 38–41–108 in that they did not pay all taxes assessed to the subject property for the required seven year period. Defendants do not dispute the fact that plaintiffs did pay taxes on the property each of the seven years in question, but they claim that, because the Railroad also paid taxes on the property during several of those years, plaintiffs did not satisfy the tax payment requirement of the statute.

We agree with the trial court which found "no significance that the [R]ailroad may have paid taxes on the property also...." Section 38–41–108 merely provides that a person in possession must pay "all taxes legally assessed" on the land. There is no requirement that the person be the "exclusive payer" of taxes on the property, and we refuse to interpret the statute to impose such a requirement.

We also note the trial court finding that, after the Railroad abandoned the land, it continued paying taxes "simply because it could not get the property off [the] tax rolls."

Defendants also claim that plaintiffs failed to comply with § 38–41–108 in that they did not have color of title to the right-of-way. We disagree.

If, as here, a grantor retains a possibility of reverter in his name only and thereafter conveys by a general warranty deed which purports to confirm a conveyance of "all reversion or reversions" and which excepts only the "right of way" conveyed to the railroad, we conclude that color of title in the grantee is thereby established for all rights of the grantor in the property previously owned.

Hence, we conclude that the trial court did not err in determining that plaintiffs had acquired title to the subject property by adverse possession in compliance with § 38–41–108. Accordingly, we need not address the two alternative bases upon which the trial court quieted title in plaintiffs.

■ Defendants next contend that the trial court erred in requiring them to pay certain costs and fees incurred in compensating an attorney appointed pursuant to the United States Soldiers and Sailors Civil Relief Act, 50 U.S.C.App. § 501 et seq. (1988). We agree.

Plaintiffs cite no authority for assessing these costs against defendants and we are aware of none. Hence, we conclude that these costs are payable by the plaintiffs and should be so assessed. *See* § 13–16–122, C.R.S. (1987 Repl. Vol. 6A).

Except for the award of costs, the judgment is affirmed. The cause is remanded with directions to amend the judgment in order to require plaintiffs to pay all costs and fees of the attorney appointed pursuant to the Soldiers and Sailors Civil Relief Act.

SMITH and RULAND, JJ., concur.